IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LINDA G. MOORE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:03-cv-559 |
| STATE OF TENNESSEE, et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the court on the motion of defendants David Haggard and Fay Hall, sued in their individual capacities, for summary judgment [doc. 66]. The plaintiff has responded [doc. 95], and the defendants have filed a reply brief [doc. 98]. The court finds that oral argument is not necessary, and the motion is ripe for the court's consideration. For the reasons discussed below, summary judgment will be granted as to defendant David Haggard and denied as to defendant Fay Hall.

In her amended complaint [doc. 31], the plaintiff contends that her treatment while a pre-trial detainee in the Roane County jail was a violation of her Eighth and Fourteenth Amendment rights. She alleges that David Haggard as the

Sheriff of Roane County, and Fay Hall, as chief of the jail, acted with deliberate indifference to her medical needs and failed to provide her with basic life necessities in violation of 42 U.S.C. §§ 1983 and 1985.

## FACTUAL BACKGROUND

The following facts are taken from the deposition excerpts, exhibits, and affidavits filed with this motion and with the motion filed by the defendants in their official capacities [doc. 64].[1] On October 29, 2002, the plaintiff was arrested by Roane County officers on a charge of custodial interference. It was alleged that the plaintiff had taken her grandson and refused to turn him over to the Department of Human Services.[2] The plaintiff was evidently taken first to the Blount County Detention Center, but they refused to keep her because of an alleged suicide threat. The plaintiff, however, denies that she ever threatened to commit suicide. In any event, she was then taken to the Roane County Jail where defendant Hall, as the chief jailer, ordered that she be placed in a holding cell on suicide watch. It is undisputed that the plaintiff never talked to or interacted with Sheriff Haggard or with Hall for the nine months she was in the Roane County jail.

---

[1] The defendants specifically incorporate these exhibits with the motion under consideration by the court.

[2] The plaintiff was indicted for custodial interference, and bond was set and eventually reduced to $5,000.00 on the condition that she return the child to the Department of Human Services.

2

The holding cell at the Roane County jail was a small cell with a cement bench along one or more sides and a toilet and sink. A small window in the door was used to check on the prisoners, and there was also a camera in the cell. The toilet could not be seen either from the door or the camera. The record shows that the holding cell is usually used for prisoners on suicide watch or prisoners that are intoxicated or belligerent, and they are held there for only a couple of days. Prisoners on suicide watch in the holding cell were to be checked every fifteen minutes and were allowed no blanket, mattress or mat, no cup for water, no recreation, no commissary items such as deodorant or a toothbrush, and no visitors in the cell. The prisoners had to sit and sleep on the concrete bench.

In this case, after three days, the plaintiff was given a blanket, and on November 13, she was given a mat on which to lie. She was also taken out and allowed to shower about every three days, and she was allowed visitors and phone calls. Her commissary items were kept for her by the jailer. The jail records show that the plaintiff was closely observed only the first day she was in the cell.

At the time the plaintiff, age 51, was booked into the Roane County jail she was asked about her medical situation and any medications she was taking. She claimed that she had heart trouble, diabetes, high blood pressure, kidney disorder, asthma, stomach disorder, allergies, and depression. The next day, the plaintiff's doctor, Dr. Tedder, faxed a list to the jail of the plaintiff's ten medications. The jail doctor, Dr. Boduch, declined to examine or treat the plaintiff because of a

3

conflict of interest. He advised defendant Hall that the plaintiff needed to be seen by her own doctor. Dr. Tedder states in her affidavit that she cannot recall ever talking to defendant Hall about the plaintiff's medical condition, and she never examined the defendant in the jail. Dr. Tedder treated the plaintiff twice in her office during the time the plaintiff was incarcerated (January and July 2003). It appears that the plaintiff was given her medications, although she claims that the amounts were reduced.

After the plaintiff had been in the holding cell for two weeks, she was taken to the hospital and diagnosed with acute renal failure. Hall said she was told by the hospital and a jailer that the plaintiff was on a hunger strike, an allegation the plaintiff denies. The plaintiff stayed in the hospital for about five days and was returned to Roane County jail and placed back into the holding cell. Hall says it was because of the plaintiff's hunger strike. Dr. Tedder stated in her affidavit that she is concerned for the plaintiff's future renal health given the plaintiff's diabetes and the episode of acute renal failure.

The jail records show that the jailer on duty observed the plaintiff coughing up blood on November 19, and defendant Hall was paged. There is nothing in the records to show that Hall ever responded to the page or ordered any medical care. The plaintiff was told by the jailer on duty to lie on the floor, evidently to keep her from falling down. For several days thereafter, the plaintiff complained of constipation, and she was given prune juice. Finally, on November 30, the plaintiff

4

completed a Medical Request complaining that her colon was "locked," and she was returned to the hospital that day. On December 3, the plaintiff was finally moved to the women's cell which had bedding, a shower and a telephone. The remainder of her stay was in this cell.

In spite of being housed in a somewhat better location, the plaintiff was hospitalized in January 2003 for hypoglycemia, and again in April for an infection. In June, she found a lump under her arm, and Dr. Tedder ordered a mammogram, which was never done. On August 3, the plaintiff had a seizure in her cell and passed out, hurting her leg. Two days later, she completed a Medical Request advising that she thought her foot/leg was "badly bruised or broken." On August 7, she was taken to the hospital where an x-ray revealed a broken fibula. She received no treatment for the broken bone and was returned to the Roane County jail. The plaintiff says that while she was in jail she also suffered from infected spider bites, an infected boil, head lice and a fungal infection.

The child the plaintiff was supposed to have been hiding was found at the plaintiff's house on August 5, the day she reported her injury. The plaintiff was finally able to make bond on August 8, 2003, a day after she was diagnosed with a broken fibula.

## LEGAL DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim or demonstrate that there is a genuine material factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859 863 (6th Cir. 1986)).

The defendants raise three arguments in support of their motion for summary judgment: qualified immunity; broad deference accorded prison officials; and failure to plead damages with particularity.  Only the defendants' qualified immunity argument deserves any discussion.  The plaintiff also mentions 42 U.S.C. § 1985 as a basis for her claims against Haggard and Hall, but the plaintiff makes no specific allegations of conspiracy and defendants did not move for summary judgment on any such claims.  In any event, a § 1985 claim requires that there be some racial or other class-based invidiously discriminatory animus behind the

6

conspirators' action, and there is clearly none in this case.  *See Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)

## I.  Qualified Immunity

Qualified immunity is an immunity from suit, not just a defense to liability.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  The threshold question is whether, taking the facts in the light most favorable to the plaintiff, the plaintiff can show that the defendants' conduct violated the plaintiff's constitutional rights.  *Id.* at 201.  If the answer is yes, then the court must determine whether, under the circumstances of the case,  it was clearly established law that the defendants' conduct was unlawful.  *Id.*

### A.  Constitutional Violation

The first question is whether the plaintiff has come forward with sufficient facts upon which a jury could find that the actions of the defendants violated her Fourteenth Amendment rights[3] to be free from cruel and unusual treatment while detained in the Roane County jail.  The plaintiff contends that she was put in the holding cell without justification and without minimal life necessities, and kept there for five weeks.

---

[3] Both the plaintiff and the defendants make their arguments under the Eighth Amendment.  The Eighth Amendment prohibition against cruel and unusual punishment, however, applies only to those convicted of crimes.  *See Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977).  Nevertheless, pretrial detainees "retain at least those constitutional rights . . . enjoyed by convicted prisoners." *Bell V. Wolfish*, 441 U.S. 520, 545 (1979).  And, under the Fourteenth Amendment, the pretrial detainee's rights are analogous to the convicted prisoner's rights.  *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992).

The United States Constitution requires that jail officials provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). A prison official may be liable for the treatment of a pretrial detainee only if the deprivation is objectively "sufficiently serious," that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Further, the prison official must be found to have a "sufficiently culpable state of mind." *Id.* at 834. The Supreme Court defines the state-of-mind requirement as deliberate indifference. *Id.* "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. The plaintiff must show more than mere negligence. *See Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). In *Farmer*, the Supreme Court went on to describe deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot

8

> under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38.  Thus, there is both an objective and a subjective component to deliberate indifference.

### (1) Sheriff David Haggard

On the issue of Sheriff Haggard's request for qualified immunity, the plaintiff has provided the court with excerpts from the Sheriff's deposition (exh. 10 to doc. 95).  The defendant is evidently relying on the plaintiff's deposition responses.  Sheriff Haggard stated in his deposition that he was not personally involved with the booking of the plaintiff nor was he involved with any of the decisions concerning her medical treatment.

In Tennessee, a sheriff in his official capacity has a responsibility under section 41-4-101 of the Tennessee Code Annotated to take care of the prisoners in the county jail.[4]  However, the court finds that there is nothing in the record upon which a jury could find that Sheriff Haggard in his individual capacity acted with deliberate indifference and personally violated the plaintiff's constitutional rights while she was in the Roane County jail.  Deliberate indifference, as defined by the Supreme Court, requires the Sheriff to have had some knowledge of the conditions

---

[4] Section 41-4-101 provides: "The sheriff of the county has, except in cases otherwise provided by law, the custody and charge of the jail of the county, and of all prisoners committed thereto, and may appoint a jailer, for whose acts the sheriff is civilly responsible." By statute the jailer must furnish support (Tenn. Code Ann. § 41-4-108), adequate food and bedding (Tenn. Code Ann. § 41-4-109), bathing facilities and a clean jail (Tenn. Code Ann. § 41-4-111), and medical care (Tenn. Code Ann. § 41-4-115).

9

which plaintiff was enduring. There is nothing in the record that would raise an issue concerning Sheriff Haggard's lack of interaction with the plaintiff, lack of any orders concerning her incarceration, or lack of any decisions made about her medical care.

Therefore, the court finds that Sheriff Haggard is entitled to qualified immunity because there is no factual issue concerning whether or not he violated the plaintiff's constitutional rights. To the extent that the plaintiff states a claim against Sheriff Haggard under the Tennessee Government Tort Liability Act, the court declines to exercise its supplemental jurisdiction over that claim, and it will be dismissed under 28 U.S.C. § 1367(c)(3).

### (2) Captain Fay Hall

The parties have supplied the court with Fay Hall's affidavit (exh. 2 to doc. 64) and excerpts of her deposition (exh. 6 to doc. 95). In making her argument that she is entitled to qualified immunity, Hall relies on the fact that she never had any interaction with the plaintiff and that the plaintiff received three meals a day, medical attention when it was requested, and occasional showers.

### (a) Objective component of Fourteenth Amendment claim

In order to satisfy the objective component of her claim, the plaintiff must allege that the deprivations she suffered while in the Roane County jail were "sufficiently serious." The plaintiff alleges that she was denied adequate medical attention to her known medical needs, resulting in several visits to the hospital with potentially life threatening conditions.

10

The record shows that Hall made the initial decision to place the plaintiff in the holding cell and to keep her there for five weeks in spite of having knowledge of plaintiff's medical condition when she was booked. The plaintiff had to be hospitalized twice during this time, once for acute renal failure and once for severe constipation. The jail records show that Hall was also paged and consulted during this time about the plaintiff's medical condition, although she evidently did not always respond. Dr. Boduch, the jail doctor, declined to treat the plaintiff because of a conflict of interest, but the plaintiff's doctor does not recall ever talking with Hall about the plaintiff's medical condition.

In addition, Hall had a statutory responsibility for the cleanliness of the jail and for providing facilities for the prisoners so they could keep themselves clean. Nevertheless, the plaintiff suffered from spider bites, head lice, and infected sores.

Even giving Hall the benefit of doubt that the plaintiff's self-described depression when she was booked was sufficient reason to put her in the holding cell, the court finds that a jury could find that keeping the plaintiff in the holding cell for five weeks amounted to deliberate indifference to the plaintiff's needs. When she was booked into the jail, the plaintiff reported several serious medical conditions which, according to both Dr. Tedder and Dr. Boduch, would have been exacerbated by the conditions of the holding cell.

### (b) Subjective component of the plaintiff's claim

The record before the court demonstrates that Hall was aware of the plaintiff's medical condition when ordering the plaintiff to be held in the holding cell. In fact, one of the reasons Hall justified her order to place and keep the plaintiff in the holding cell was the plaintiff's statement that she suffered from depression. Further, there is evidence in the record that Hall was notified when the plaintiff was having medical problems; *e.g.*, coughing up blood, and Hall was told by Dr. Boduch that he could not treat the plaintiff, but she never contacted Dr. Tedder about the plaintiff's condition. Finally, there is also evidence that Hall knew the plaintiff was not a suicide risk, because after the first day, the plaintiff was not observed every fifteen minutes, she was allowed visitors, and was given a mat and blanket. Nevertheless, Hall kept her in the holding cell for five weeks. The court finds that the plaintiff has alleged sufficient facts upon which a jury could conclude that Hall knew of the plaintiff's serious needs, and deliberately ignored them.

There are material issues of fact for the jury's determination: whether the conditions of the holding cell deprived the plaintiff of "the minimal civilized measure of life's necessities," and whether defendant Hall was aware that a substantial risk of serious harm to the plaintiff existed and she disregarded that risk. Therefore, the court finds that the plaintiff has met her burden of showing that a jury could find that defendant Hall's actions violated her constitutional rights.

### B. Clearly Established Law

Having found that the plaintiff has met her initial burden of showing that a jury could find that defendant Hall violated the plaintiffs' constitutional rights, the next step of the qualified immunity inquiry is whether the rights were clearly established such that a reasonable officer, at the time the act was committed, would have understood that her actions violated the plaintiff's rights. *Saucier*, 533 U.S. at 201. This inquiry is to be undertaken in light of the circumstances of the case, "not as a broad general proposition." *Id.* It is not necessary to find a case with exactly the same issues, but "in the light of the pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Initially, it must be noted that neither the plaintiff nor Hall have provided the court with any relevant case law on this issue. In her memorandum, Hall sets out the qualified immunity standard, then states that "it is clear that neither Sheriff Haggard or Captain Hall violated any clearly established right of the plaintiff of which they should have known." The plaintiff does not really ever address the elements of a qualified immunity defense in her response.

Nevertheless, the court finds that Hall should have understood that placing the plaintiff in the holding cell for five weeks without justification (a point that is in dispute), could be considered punishment and a violation of the plaintiff's constitutional rights. In *Bell v. Wolfish*, 441 U.S. 520, 539 (1979), the Supreme Court found that if a particular condition or restriction is reasonably related to a

13

legitimate governmental objective, it does not necessarily amount to punishment. However, if the condition or restriction is not reasonably related to a legitimate goal; that is, it is arbitrary or purposeless, then the court may infer that the purpose is punishment that may not be constitutionally inflicted on detainees. *Id.*

Further, the Supreme Court stated in 1993 that jail officials such as Hall may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). The Constitution, through the Fourteenth Amendment, protects detainees against future harm. *Id.* In this case, the plaintiff has come forward with sufficient evidence that her conditions of confinement, especially her detention in the holding cell for five weeks, resulted in harm – she was hospitalized twice during that period of time.

Finally, Hall had a statutory duty as the jailer to provide adequate food and bedding (Tenn. Code Ann. § 41-4-109), a clean jail, clean and sufficient bedding, and facilities for bathing (Tenn. Code Ann. § 41-4-111), and medical care (Tenn. Code Ann. § 41-4-115). While a violation of statutory duties does not necessarily preclude a finding of qualified immunity (*see Davis v. Scherer*, 468 U.S. 183, 190 (1984)), in this case, the statutory duties are those required by the constitution. Hall, as the head jailer, should be aware of her statutory/constitutional duties to the detainees in her custody, and cannot escape liability on the basis of qualified immunity.

14

For these reasons, the court finds that the motion of defendant Fay Hall for qualified immunity must be denied.

## II. Entitlement to Broad Deference

The defendants contend that the claims against them should be dismissed because prison officials are entitled to broad deference in the administration of the Roane County jail. The cases cited for this proposition, however, relate to the regulations and policies of prisons, not the treatment of specific detainees. *See Bell*, 441 U.S. at 547. The court does not read the plaintiff's claims as relating to the policies and procedures of the Roane County jail. Rather, her complaints concern only her own incarceration and treatment. Therefore, the defendants' motion on this ground will be denied.

## III. Failure to Plead with Particularity

Once again, the attorney for the defendants has sought dismissal of a § 1983 action based on a theory that there is a heightened pleading standard. Evidently, the court's consistent rejection of this argument has failed to convince counsel of the wrongfulness of his position. The court will once again cite counsel to the Supreme Court case which specifically rejects the line of Fifth Circuit cases upon which he relies, as well as a citation to a Sixth Circuit case which comes to the same conclusion. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Evans-Marshall v. Bd. of Ed. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005) ("Claims under 42

15

U.S.C. § 1983 are not subject to heightened pleading standards."). Counsel should consider abandoning this argument lest he find himself subject to Rule 11 sanctions.

**CONCLUSION**

For the reasons stated above, the court finds that the claims against Sheriff Haggard, sued in his individual capacity, must be dismissed. The motion for summary judgment submitted by defendant Fay Hall, sued in her individual capacity, will be denied. An order reflecting this opinion will be entered.

ENTER:

*s/ Leon Jordan*
United States District Judge